IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OMAR SHERIEFF CASH, | ) | |
|     Plaintiff | ) | C.A. 12-312 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Baxter |
| JOHN WETZEL, et al., | ) | |
|     Defendants. | ) | |

# OPINION AND ORDER[1]

United States Magistrate Judge Susan Paradise Baxter.

## I.    INTRODUCTION

### A.    Relevant Procedural History

Plaintiff Omar Sherieff Cash, a prisoner formerly incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion")[2] initiated this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, on December 17, 2012 [ECF No. 3]. Plaintiff subsequently filed an amended complaint on August 23, 2013 [ECF No. 32], which superseded the original complaint and is the operative pleading in this case. Named as Defendants are: John Wetzel ("Wetzel"), Secretary of the Pennsylvania Department of Corrections ("DOC"); Dorina Varner ("Varner"), Chief Grievance Officer for the DOC; Michael Harlow ("Harlow"), former superintendent at SCI-Albion; Ronald Bryant ("Bryant"), former deputy superintendent at SCI-Albion; Captain M. Edmunds ("Edmunds"), Lieutenant Knepper ("Knepper"), and Sergeant Morgan ("Morgan"), corrections officers at SCI-Albion; and Dana Arrington ("Arrington"), Grievance Coordinator at SCI-Albion.

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 5, 18].

[2] Plaintiff is currently incarcerated at the State Correctional Institution at Greene in Waynesburg, Pennsylvania. [ECF No. 49].

In his amended complaint, Plaintiff alleges that he was placed in administrative segregation at SCI-Albion on February 15, 2011, after he was charged with a capital offense in Philadelphia County, Pennsylvania. (ECF No. 32, Amended Complaint, at ¶¶ 12, 16-17). On May 30, 2012, Plaintiff's direct appeal of his original state court conviction in Bucks County, Pennsylvania, was exhausted (Id. at ¶ 19). On July 20, 2012, Plaintiff received an intercom transmission in his cell notifying him that a box of legal materials had arrived, addressed to him (Id. at ¶ 13). On July 22, 2012, Plaintiff submitted a request slip to Defendant Knepper indicating that he never received the box of legal materials after he was notified of its arrival (Id. at ¶ 14). Defendant Knepper responded to Plaintiff's request slip on July 29, 2012, indicating that Defendant Morgan stated that "he looked in the box more closely [and] it was another inmate's documents, but the box it was in was recycled and had had [Plaintiff's] name on it, so he [wrongly] assumed it was [Plaintiff's]" (Id. at ¶ 15).

Based on the foregoing, Plaintiff raises claims under the first, sixth, eighth, and fourteenth amendments to the United States Constitution. In particular, Plaintiff alleges: (i) a denial of access to courts claim against Defendant Morgan; (ii) failure to intervene/deliberate indifference claims against Defendants Knepper, Arrington, Edmunds, Harlow, Varner, and Bryant; (iii) a conspiracy claim against Defendants Knepper, Morgan, Edmunds, Bryant, Harlow, Varner, and Arrington; (iv) a Fourteenth Amendment due process claim against Defendant Bryant; (v) a Fourteenth Amendment equal protection claim against Defendants Bryant and Wetzel; (vi) a First Amendment denial of counsel claim against Defendant Bryant; and (vii) supervisory liability claims against Defendants Knepper, Bryant, Harlow, and Wetzel. As relief for his claims, Plaintiff seeks declaratory and injunctive relief, and compensatory and punitive damages.

On September 3, 2013, Defendants filed a motion to dismiss [ECF No. 37], asserting, *inter alia*, that Plaintiff has failed to state a claim upon which relief may be granted. Plaintiff has since filed a motion and brief in opposition to Defendants' motion, essentially re-asserting the allegations of the amended complaint. [ECF Nos. 46, 47]. This matter is now ripe for consideration.

### B. Standards of Review

#### 1. Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead

'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit Court has prescribed the following three-step approach to determine the sufficiency of a complaint under Twombly and Iqbal:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011), citing Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S.Ct. at 1947, 1950); see also Great Western Mining & Min. Co. v. Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010).

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g.,

Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### C. Discussion

#### 1. Access to Courts

Based on Defendant Morgan's statement that he had looked in the box of legal materials apparently addressed to Plaintiff on July 20, 2012, and determined that the contents of the box belonged to another inmate, Plaintiff alleges that Defendant Morgan opened his legal mail outside of his presence and allegedly stole the state court transcript that Plaintiff needed to prepare and file as part of a petition under Pennsylvania's Post-Conviction Collateral Relief Act (Id. at ¶ 20, 21-23). As a result, Plaintiff claims that Defendant Morgan denied him access to the courts in violation of his constitutional rights.

Prisoners have a constitutional right to "adequate, effective and meaningful" access to the courts. Bounds v. Smith, 430 U.S. 817 (1977).3 Importantly, a plaintiff must demonstrate actual

---

3 The Supreme Court has identified two general categories of denial of access to courts claims. Christopher, 536 U.S. at 412-13; see also Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety – Div. of State Police, 411 F.3d 427, 441 (3d Cir. 2005) overruled in part on other grounds as noted in Dique v. N.J. State Police, 603 F.3d 181 (3d Cir. 2010). The first type is "forward-looking" claims which allege that official action frustrates a plaintiff in preparing and filing suit at the present time. Christopher, 536 U.S. at 413. The second category covers "backward – looking" claims which allege that official acts "have caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief …. These cases do not look forward to a class of further litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable. The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." Christopher, 536 U.S. at 413-14 (citations omitted).

injury stemming from the denial of access.4 Lewis v. Casey, 518 U.S. 343 (1996). The actual injury requirement "derives from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." Id. at 349. See also Stokes v. Gehr, 399 Fed.Appx. 697, 699 (3d Cir. 2010) (the actual injury requirement articulated in Lewis is "derived from principles of standing, … an unwaivable constitutional prerequisite.").

A plaintiff must allege both an underlying cause of action, whether anticipated or lost, and official acts frustrating the litigation. Christopher v. Harbury, 536 U.S. 403 (2002). In order to state an access to courts claim, "[w]here prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' – that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." Monroe v. Beard, 536 F.3d 198, 205-06 (3d Cir. 2008) quoting Christopher, 536 U.S. at 415. "To that end, prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" Id.

Furthermore, a plaintiff must demonstrate intent on the part of the defendants. The Third Circuit has explained:

> A denial of access claim is available where the state officials "*wrongfully and intentionally* conceal information crucial to a person's ability to obtain redress through the courts, and so *for the purpose of frustrating that right*, and that concealment, and the delay engendered by it substantially reduce the likelihood of one's obtaining the relief to which one is otherwise entitled.

---

4
Prisoners are limited to proceeding on access to courts claims challenging either their sentence (by direct or collateral attack) or their conditions of confinement, as the "impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis, 518 U.S. at 355.

Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety – Div. of State Police, 411 F.3d 427, 445 (3d Cir. 2005). See also Burkett v. Newman, 2012 WL 1038914, at *3 (W.D. Pa. Fed. 21, 2012).

So then, in order to support his access to courts claims, Plaintiff is required to demonstrate that he has lost the opportunity to pursue a non-frivolous or arguable underlying legal claim, that there is no other remedy available to him, and that Defendants had the requisite intent to deny his constitutional right of access to courts. Here, Plaintiff claims that Defendant Morgan's alleged theft of his legal property prevented him "from preparing his PCRA petition ergo interfering with Plaintiff appealing his criminal conviction in Bucks County, Pennsylvania…." (ECF No. 32, Amended Complaint, at ¶ 29).

First, as Defendants argue, Plaintiff has failed to establish that any of his own legal property was affected, let alone stolen, by Defendant Morgan. Plaintiff's own allegations indicate that he was simply notified that legal materials had been received in a box that was addressed to him; however, he alleges that he was later informed that the box was mislabeled and the contents actually belonged to another inmate. Nonetheless, because the contents of the box were viewed without him being present, Plaintiff summarily accuses Defendant Morgan of fabricating the story to cover-up his theft of Plaintiff's legal material that Plaintiff speculatively claims was in the box. Thus, the entirety of Plaintiff's claim is based purely on conjecture and unsubstantiated allegations.

Moreover, even assuming, for arguments sake, that Plaintiff's legal materials were purposely taken by Defendant Morgan, Plaintiff still falls short of establishing that he lost the opportunity to pursue a non-frivolous or arguable legal claim. In fact, attached to his opposition brief is a copy of a transcript from Plaintiff's PCRA hearing that was held in Bucks County on

March 14, 2013, which indicates that Plaintiff did, indeed, file a PCRA petition in October 2012 and was subsequently appointed counsel, who was granted leave to amend the petition to address additional issues. (ECF No. 47 at p. 31). Thus, Plaintiff cannot establish that he was denied access to the courts as a result of Defendant Morgan's alleged actions, and said claim will be dismissed accordingly.

### 2. Deliberate Indifference/Failure to Intervene

Plaintiff claims that Defendants Knepper, Arrington, Edmunds, Bryant, Harlow, and Varner were deliberately indifferent to his rights because they failed to intervene and stop Defendant Morgan from allegedly opening and taking Plaintiff's legal material. As noted earlier, however, Plaintiff's claim that Defendant Morgan stole his legal property is purely speculative. It follows, therefore, that the foregoing Defendants cannot be found liable for failing to prevent a speculative act, and such claims will be dismissed.

### 3. Conspiracy

Plaintiff further claims that Defendants Knepper, Morgan, Edmunds, Bryant, Harlow, and Varner, conspired to allow and/or cover-up Defendant Morgan's alleged theft of Plaintiff's legal materials. It is apparent, however, that Plaintiff's conspiracy claim is based upon his own suspicion and speculation, rather than fact. As a result, Plaintiff's conspiracy claim fails to state a claim upon which relief may be granted and will be dismissed. See Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991); Wardell v. City of Erie, 2014 WL 3697945, at *2 n.8 (W.D.Pa. July 24, 2014) ("allegations of conspiracy must be grounded firmly in facts; they cannot be conclusory nor can they hinge on bare suspicions and foundationless speculation").

### 4. Due Process

Plaintiff claims that Defendant Bryant violated his Fourteenth Amendment due process rights by housing him in administrative custody for being charged with, but not convicted of, a capital offense.

To establish a due process claim under the Fourteenth Amendment, Plaintiff must demonstrate (i) the existence of a constitutionally protected liberty or property interest; and (ii) constitutionally deficient procedures by the state in its deprivation of that interest. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972). If there is no protected interest, there is no need to determine whether the alleged deprivation was without due process. Alvin v. Suzuki, 227 F.3d 101, 116 (3d Cir. 2000).

In response to Plaintiff's due process challenge, the Defendants argue that no due process rights were violated because no liberty interest was at stake. Indeed, "long periods of confinement under highly restrictive conditions have been held insufficient to trigger the protections of the Due Process Clause." Griffin v. Vaughn, 112 F.3d 703, 706-09 (3d Cir. 1997) (transfer to administrative custody with strict limits on property, visitation and out-of-cell activities does not implicate inmate's due process rights)(citations omitted). Additionally, the Supreme Court held in Sandin v. Conner, 515 U.S. 472 (1995), that "segregated confinement d[oes] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." 515 U.S. at 486. In reaching this conclusion, however, the Sandin court "did not pronounce a *per se* rule." Mitchell v. Horn, 318 F.3d 523, 531 (3d Cir. 2003).

"In deciding whether a protected liberty interest exists under Sandin, we consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions." Mitchell, 318 F.3d at 531-32, citing Shoats v. Horn, 213 F.3d 140, 144

(3d Cir. 2000). In applying these factors, the Third Circuit has reached differing conclusions, "reflecting the fact-specific nature of the Sandin test." Mitchell, 318 F.3d at 532, comparing, *inter alia*, Shoats, 213 F.3d at 144 (eight years in administrative confinement, during which inmate was locked in his cell for all but two hours per week, denied contact with his family, and prohibited him from visiting the library or "participating in any education, vocational, or other organization activities," clearly implicated a protected liberty interest), with Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002)(seven months of disciplinary confinement did not implicate a liberty interest), and Griffin, supra.

Here, Plaintiff has failed to show that his liberty interests were implicated by his confinement in SCI-Albion's Restricted Housing Unit ("RHU") under administrative custody. First, Defendants note that, according to DOC policy DC-ADM 802, "Administrative Custody (AC) is a status of confinement for non-disciplinary reasons that provides closer supervision, control, and protection than is provided in general population," and an "inmate may be assigned Administrative Custody (AC) status … [because] … the inmate has a detainer for a pending capital case, for which the prosecution is seeking the death penalty." *See* DC-ADM 802, Section 3(A)(1) and Section 1(A)(1)(i) (ECF No. 38. at pp. 7 and 12, respectively). Thus, Plaintiff's confinement was non-punitive and appropriate.

Second, the only hardships Plaintiff claims to have suffered as a result of his placement in administrative custody are: (i) the mini-law library has only one operable, outdated computer, "no books, no typewriter, and no legal assistant;" and (ii) he was the only resident of the RHU that was awaiting trial in a capital case. Neither of these "hardships" describes a condition of confinement that was appreciably different from the conditions of other similarly situated inmates, nor do they indicate that Plaintiff's time in administrative custody constituted an

atypical scenario comparable to that experienced by the plaintiff in Shoats.

Because Plaintiff's confinement in the RHU under administrative custody did not impose an "atypical and significant hardship" on Plaintiff in relation to ordinary prison life, his placement in the RHU did not trigger a liberty interest, and no process was due even if the placement resulted in a less favorable living situation. For these reasons, Plaintiff's due process claim against Defendant Bryant will be dismissed.

### 5. Equal Protection

Plaintiff also claims that his assignment to administrative custody in the RHU violated his Fourteenth Amendment equal protection rights. In so doing, Plaintiff invokes the "class of one" theory announced by the Supreme Court in Village of Willowbrook v. Olech, 528 U.S. 562 (2000). (See ECF No. 47, Plaintiff's Opposition Brief, at p. 12).

According to the "class of one" theory, "a plaintiff must allege that (i) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006), citing Olech, 528 U.S. at 564. Here, Plaintiff has failed to allege the existence of similarly situated inmates – i.e., those charged with a capital offense – who were treated differently than he. Thus, Plaintiff has failed to state a claim of equal protection upon which relief may be granted and the same will be dismissed.

### 6. Denial of Counsel

Plaintiff alleges that being housed in the RHU under administrative custody at SCI Albion forced him to correspond with his attorney in his capital offense case via U.S. mail,

effectively denying him access to legal counsel, in violation of his Sixth Amendment rights.

The Sixth Amendment to the Constitution of the United States provides "[in] all criminal prosecutions, the accused shall ... have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. This right to counsel was clarified by the Supreme Court in Maine v. Moulton, 474 U.S. 159 (1985), as follows:

> The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a "medium" between him and the State…. this guarantee includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right.

Moulton, 474 U.S. at 176.

Here, Plaintiff has made no allegation that Defendant Bryant, individually, or the DOC in general, interfered with his Sixth Amendment right to counsel, other than his complaint that he was incarcerated in the RHU three hundred miles away from his attorney. While this may have made frequent contact with his attorney more challenging, there is no allegation that Plaintiff was, in any way, prohibited from calling his attorney, corresponding with his attorney through the mail, or accepting visits from his attorney. In short, there is nothing alleged that implicates a Sixth Amendment violation, and Plaintiff's denial of counsel claim will be dismissed accordingly.

### 7. Supervisory Liability

Plaintiff claims that Defendants Knepper, Bryant, Harlow, and Wetzel, were aware of, approved, and/or acquiesced in the alleged unconstitutional actions of their subordinates, by virtue of their supervisory authority. This claim is without merit.

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v.

Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir. 1988). Section 1983 liability cannot be predicated solely on *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action). If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. Rode, 845 F.2d at 1208; Cooper v. Beard, 2006 WL 3208783 at * 14 (E.D.Pa. Nov. 2, 2006).

In light of the foregoing case law, Plaintiff's claim that Defendants Knepper, Bryant, Harlow, and Wetzel violated his constitutional rights by failing to respond to, correct, and/or investigate the actions of their subordinates will be dismissed, because it fails to state a cognizable claim upon which relief may be granted.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| OMAR SHERIEFF CASH, | ) | |
| --- | --- | --- |
| Plaintiff | ) | C.A. 12-312 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Baxter |
| JOHN WETZEL, et al., | ) | |
| Defendants. | ) | |

# **ORDER**

AND NOW, this 30th day of September, 2014,

IT IS HEREBY ORDERED that Defendant's motion to dismiss [ECF No. 37] is GRANTED, and this case is DISMISSED.

The Clerk is directed to mark this case closed.


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge